CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/19/2023
LAURA A. AUSTIN, CLERK
BY:   s/ ARLENE LITTLE
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| GARY PORTER, | CASE NO. 6:22-cv-00048 |
| *Plaintiff*, | |
| v. | MEMORANDUM OPINION AND ORDER |
| PAUL C. OHAI, M.D., | |
| *Defendant.* | JUDGE NORMAN K. MOON |

This case comes before the Court on Defendant's motion to dismiss or, in the alternative, motion for summary judgment. Previously, the Court decided to treat Defendant's motion as a motion for summary judgment on the issue of administrative exhaustion and, as a result, allowed for discovery on that issue. Viewing the record in the light most favorable to Plaintiff (the nonmoving party), the Court will conclude that there is a dispute of material fact as to whether administrative remedies were available to Plaintiff. Accordingly, the Court will deny, without prejudice, Defendant's motion for summary judgment.

## BACKGROUND

The substantive basis for Plaintiff Porter's claims is that he suffered "injuries, suffering and anguish . . . while incarcerated at Dillwyn Correctional Center," which Defendant Ohai caused by showing deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment. Dkt. 1 ¶¶ 1–2. He primarily complains of two incidents. First, in May 2021, Defendant Ohai discontinued Plaintiff's Lovenox—an anticoagulant medication—resulting in Plaintiff suffering from deep vein thrombosis and a pulmonary embolism. Dkt. 24 (Ex. F). Second, in October 2021, Plaintiff fell, breaking his arm. *Id.* (Ex. W). Despite a nurse requiring a

referral for Plaintiff's injury, *id.* (Ex. T), Defendant did not send Plaintiff for any tests for six days; moreover, he never saw Plaintiff during that time. *Id.* (Ex. V). The parties do not dispute Plaintiff's substantive claims at this stage of the litigation.

Instead, the present dispute centers on administrative exhaustion—a prerequisite for an inmate to file suit in federal court. In brief, Virginia Department of Corrections inmates are required to follow a three-step administrative process to address grievances. Dkt. 9 (Ex. A) ¶¶ 4–8. First, an inmate is required to submit an informal complaint to the Grievance Department of their prison. *Id.* ¶ 6. After an informal complaint is received, prison staff have fifteen days to respond. *Id.* Then, an inmate may submit a formal (regular) grievance. *Id.* Formal grievances are to be submitted within thirty calendar days from the incident at issue. *Id.* Finally, the inmate must appeal any dismissal of their formal grievance. *Id.* ¶ 8. Only after an inmate has exhausted this grievance process can they file a judicial complaint. Significant here, in addition to written complaints and regular grievances, inmates are allowed to file emergency grievances if they believe there are circumstances that may subject them to "immediate risk of serious personal injury or irreparable harm." *Id.* ¶ 12.

Here, it is undisputed that Plaintiff never filed a formal grievance in response to Defendant discontinuing his Lovenox. *See* Dkt. 23 at 3; *cf.* Dkt. 24 at 3–4. But he did file two emergency grievances—both of which were ignored—Dkt. 24 (Ex. D); *id.* (Ex. E), and an informal grievance that was summarily dismissed. *Id.* (Ex. X) at 2.

On the other hand, Plaintiff submitted formal and informal grievances in response to the delay in treatment for his broken arm. *Id.* (Ex. X) at 1–2. He filed two informal grievances—both

of which were rejected.[1] *Id.* He then tendered his formal grievance more than thirty days after his injury but less than thirty days after his delayed treatment.[2] Dkt. 24 (Ex. X); *see also id.* (Ex. V); *id.* (Ex. W). It was nevertheless rejected due to an "expired filing period." *Id.* (Ex. Z) at 5–6.

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable [fact finder] could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

The moving party bears the burden of establishing that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant may not rest on allegations in the pleadings; rather, it must present sufficient evidence such that a reasonable fact finder could find by a preponderance of the evidence for the non-movant. *See Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, 888 F.3d at 659.

---

[1] Plaintiff also claims to have filed "17 separate written complaints from 10/27/2021 to 11/2/2021" without receiving receipts. *Id.* at 1. But there are no records of these complaints. *Id.*

[2] It is unclear whether the parties dispute that Plaintiff's formal grievance was belatedly filed. *See* Dkt. 23 at 1 ("Porter's grievance related to his shoulder was filed out of time…"); *but see* Dkt. 24 at 11 (noting that Plaintiff's regular grievance was filed "plausibly within thirty days [of the delay in treatment], albeit more than thirty days after his injury").

## ANALYSIS

Defendant argues that Plaintiff failed to exhaust his administrative remedies, making this lawsuit premature. Dkt. 9; Dkt. 23. Plaintiff, meanwhile, counters that administrative remedies were unavailable to him. Dkt. 13 at 5; Dkt. 24.

The Prison Litigation Reform Act (PLRA) requires a prisoner plaintiff to exhaust his available administrative remedies prior to bringing suit. 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and … unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). District courts may not "excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016).[3]

A prison official initially has the burden of proving an inmate's failure to exhaust available administrative remedies. *Jones*, 549 U.S. at 216. But once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or that administrative remedies were unavailable. *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) it is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison

---

[3] This is true even if exhaustion would be futile—e.g., the inmate seeks relief, normally money damages, not available in prison grievance proceedings. *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).

4

administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process … the process that exists on paper becomes unavailable in reality.").

Here, "view[ing] the evidence in the light most favorable to the nonmoving party," *Variety Stores, Inc.*, 888 F.3d at 659, a reasonable fact finder could return a verdict in Plaintiff's favor on the issue of administrative remedy unavailability. Indeed, there is a genuine dispute of material fact as to whether Dillwyn's grievance process was available to Plaintiff.

True, as Defendant proclaims, there is little dispute that Plaintiff has not exhausted his administrative remedies, at least as to his medication suspension claim.[4] *See generally* Dkt. 9; Dkt. 23 at 3; *cf.* Dkt. 24 at 3–4. Defendant attributes Plaintiff's lack of exhaustion to "misinterpretation or ignorance of the [prison's] grievance procedure." Dkt. 23 at 1. No doubt, if that was the case, awarding (at least partial) summary judgment for Defendant would be warranted. *Adams v. Sw. Virginia Reg'l Jail*, No. 7:12-cv-00462, 2014 WL 3828392, at *3 (W.D. Va. Aug. 4, 2014), *aff'd sub nom. Adams v. Ofought*, 592 F. App'x 225 (4th Cir. 2015) (unpublished). But Plaintiff's argument does not hinge on his misunderstanding Dillwyn's grievance process. Rather, the gravamen of Plaintiff's argument is that the grievance process is "a simple dead end"—a proposition that, if proven, would absolve Plaintiff of the need to exhaust administrative remedies for his claims.[5] *Ross*, 578 U.S. at 643.

---

[4] As mentioned above, *see supra* note 2, there may be a dispute as to the timeliness of his other claim.

[5] Surprisingly, Defendant largely ignores this argument, opting to reiterate the undisputed fact that Plaintiff failed to exhaust his administrative remedies for at least one of his claims. *See generally* Dkt. 9; Dkt. 23.

Plaintiff contends that "the record reveals a troubling lack of follow-through … with regard to Mr. Porter's complaints." Dkt. 13 at 8. The Court agrees. Dillwyn's inaction is evidenced by (1) its routine dismissal of Plaintiff's emergency grievances, (2) its handling of Plaintiff's previous informal and formal grievances, and (3) Plaintiff's assertion that some of his complaints mysteriously went missing.

Despite multiple serious health issues, Plaintiff routinely had his emergency grievances dismissed. For instance, after Plaintiff was taken off Lovenox, he filed an emergency grievance complaining that his left leg was swollen and painful. Dkt. 24 (Ex. E). The prison's medical staff, however, dismissed his ailment as not an emergency. *Id.* Shortly after, he was taken to the hospital and diagnosed with deep vein thrombosis and a pulmonary embolism—conditions the *hospital classified as a* "*medical emergency*," warning that "[i]t is very important not to ignore symptoms." *Id.* (Ex. G) at 1, 3 (emphasis added). A month later, in three separate grievance filings, Plaintiff again complained of swelling and pain in his leg. *Id.* (Ex. J) (Plaintiff, explaining that his leg was "numb," "swollen and red" and insisting that "something needs to be done [sic] I have a clot in my leg and its [sic] getting worse"); *id.* (Ex. K); *id.* (Ex. N). And again, notwithstanding the hospital's recent instructions under the same circumstances, his complaints were dismissed as non-emergencies. *Id.* (Ex. J); *id.* (Ex. K); *id.* (Ex. N). In fact, Dillwyn's medical staff only sent Plaintiff to the hospital after his lawyer contacted the Attorney General of Virginia's office for help. Dkt. 1 ¶ 39. Like before, the hospital diagnosed Plaintiff with deep vein thrombosis and two pulmonary emboli. *Id.* (Ex. F). To be sure, the routine dismissal of Plaintiff's emergency grievances is not conclusive evidence of the unavailability of

administrative remedies at Dillwyn,[6] but it does raise substantial questions about the efficacy of the grievance processes at the prison.

And Dillwyn's treatment of Plaintiff's non-emergency grievances only raises more questions. The vast majority of Plaintiff's grievance filings met "nothing more than a dead-end." Dkt. 13 at 9; *see generally* Dkt. 24 (Ex. X). Some received no response, while others received nothing more than a cursory reply. *Id.* Of course, taken in isolation, the treatment of some of Plaintiff's grievance filings has little probative value. But when viewed through the lens of Plaintiff's only grievance to receive a response by the warden of the prison, Dkt. 9 (Ex. A) at 32, 47–50, the overall grievance process might be viewed in a different light. That grievance, concerning the prison denying Plaintiff access to his medical records, was ultimately deemed founded. *Id.* at 48. More importantly, however, the prison's response came *only after* Plaintiff's lawyer contacted the Attorney General's office, asking them to get involved.[7] *See* Dkt. 13 (Ex. B); *id.* (Ex. C). Before, Plaintiff had been left in limbo for more than two months waiting for the prison to respond. *See* Dkt. 9 (Ex. A) at 47. The disparate treatment of grievances when the Attorney General's office is involved versus when they are not indicates the insufficiency of Dillwyn's administrative remedies in the usual course.

Furthermore, in the present case, Plaintiff attests, in a declaration submitted under oath, *see* Dkt. 24 (Ex. A) ¶ 21, that he filed "17 separate written complaints" while he waited for his

---

[6] Plaintiff asks the Court to "find that the emergency grievance process was unavailable to Mr. Porter" and, consequently, "deny Defendant's motion." Dkt. 24 at 11. But that argument goes too far. The emergency grievance process is not an administrative remedy Plaintiff was required to exhaust; instead, it is a separate administrative process allowing inmates to request emergency aid. *Id.* (Ex. B) at 25:11–17. The Court merely mentions Plaintiff's trouble with Dillwyn's emergency grievance procedures as circumstantial evidence of the unavailability of the facility's other grievance processes.

[7] Similarly, Plaintiff had to enlist the help of the Attorney General's office in order to be sent to the hospital for treatment of his blood clots. *See supra* p. 6.

broken arm to be treated but received "no receipts for any [of those] complaints." Dkt. 24 (Ex. X). This fact is significant "because, without a receipt, Mr. Porter could not 'further his issue' in the grievance process." Dkt. 24 at 11 n.3 (citation omitted); *see also id.* (Ex. B) at 47:5–13. The prison, for its part, claims to "have not received the mentioned complaint forms." *Id.* (Ex. X). Yet, it introduced no evidence to substantiate that claim. Given the above evidence, it is certainly plausible that the prison is at fault for misplacing Plaintiff's complaints and, consequently, making administrative exhaustion more difficult for Plaintiff. *Batiste v. Pollard*, No. 7:20-cv-00258, 2021 WL 4448299, at *5 (W.D. Va. Sept. 28, 2021) (noting that "[i]t is not entirely inconceivable that a sensitive administrative remedy request form might be thrown out by staff").

Taken as a whole, Plaintiff's experience—at minimum—presents a dispute of material fact about whether Dillwyn's administrative procedures were genuinely available to him. Plaintiff describes specific actions he took and/or attempted to take that are within the parameters of the actions that a reasonably diligent inmate might undertake to initiate a relevant administrative remedy process. And he has described the manner in which he believes those efforts were obstructed. Even though a more fully developed record might ultimately disprove Porter's assertions that administrative remedies were not available to him, the Court cannot award summary judgment on the present record.[8]

---

[8] "'[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.'" *Woodhouse v. Duncan*, 741 F. App'x 177, 178 (4th Cir. 2018) (per curiam) (quoting *Small v. Camden Cty.*, 728 F.3d 265, 271 (3d Cir. 2013)). As there is a genuine dispute of material fact as to the availability of administrative remedies at Dillwyn, the Court will deny, without prejudice, Defendant's motion. The Court intends to hold an evidentiary hearing on whether administrative remedies were available to Plaintiff.

### Conclusion

For the foregoing reasons, the Court **DENIES**, without prejudice, Defendant's motion to dismiss or, in the alternative, motion for summary judgment. Dkt. 8.

The Court **DIRECTS** the parties to contact the Lynchburg Clerk's Office to schedule an evidentiary hearing on whether administrative remedies were available to Plaintiff.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion & Order to all counsel of record.

Entered this 19th day of September 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE